# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION



AVON SLAY GRADY, )
      Plaintiff, )
v. ) Case No. CV406-123
McARTHUR HOLMES, Jail Administrator, SHERIFF AL ST. LAWRENCE, EATHEN DAVIS, Captain of Operations, and MONICA BRYANT, Assistant Unit Manager, )
      Defendants. )

## REPORT AND RECOMMENDATION

Before the Court is defendants' motion for summary judgment, doc. 31, and plaintiff's response. Doc. 41. For the following reasons, defendants' motion should be GRANTED.

## I. Background

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 on May 9, 2006, alleging that upon his pretrial confinement at the Chatham County Jail on November 10, 2005, he was placed in the "solitary confinement

unit" without first receiving the due process protections to which he was entitled and was kept there until he was transferred to a state prison on June 9, 2006. Docs. 1, 11. Plaintiff contends that during his solitary confinement he was "constantly kept in shackles and handcuffs,"[1] was handcuffed to a door for an unspecified period, was deprived of his clothes and bedding, and was strapped to a chair for seventy-two hours. Id. Plaintiff also alleges that there were "times" when he was denied his "hour out of the 24 hour lockdown status."[2] Doc. 1. Plaintiff's complaint does not describe how each of the named defendants participated in these alleged wrongs, other than contending that the policies under which the solitary confinement unit operates "have been allowed to continue" by these supervisory officials.[3] Id.; Grady dep. at 174-81 (where plaintiff indicates that he is suing defendants Holmes and St. Lawrence because

---

[1] When directed by the Court to supplement his complaint, doc. 10, plaintiff clarified that he was not required to wear restraints at all times but was on occasion restrained for up to 18 hours. Docs. 1, 11.

[2] Plaintiff also testified that he was not fed regularly and on one occasion was "hog-tied", Grady Dep., at 40, 165, but these allegations were not part of his complaint. Doc. 11,

[3] Plaintiff has sued McArthur Holmes, the jail administrator; Al St. Lawrence, the Sheriff of Chatham County; Eathen Davis, the Captain of Operations for the sheriff's department; and Monica Bryant, the assistant unit manager of Unit 2 (the jail's solitary unit). Docs. 1, 31.

2

they are in the "chain of command" and are responsible for the jail staff's failure to comply with the jail's policies and rules, and that he is suing defendant Davis because he allowed plaintiff to be housed in Unit 2-D and defendant Bryant because "she [is] over 2-D.").

Plaintiff seeks injunctive relief and monetary damages for his "duress and oppression," including mental pain and suffering. Id.

## II.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing laws. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990)(citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying

those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Products Div., 932 F.2d 1384, 1387 (11th Cir.), cert. denied, 502 U.S. 925 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those

portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1515.

III. Analysis

Plaintiff challenges his placement in solitary confinement without first receiving "due process," asserts that he was subjected to further unlawful restraints while in solitary, and contends that he was on occasion denied his one-hour exercise period. Doc. 1.

A. Solitary Confinement

The Constitution does not establish "an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters." Hewitt v. Helms, 459 U.S. 460, 466 (1983), *overruled on other grounds*, Sandin v. Conner, 515 U.S. 472 (1995). However, a change in confinement conditions of a prisoner or detainee from general population to solitary confinement may implicate a liberty interest where the change imposes a hardship that is "atypical and significant . . . in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483. Where such a liberty interest exists, the

detainee or prisoner is entitled to some minimal due process protection within a reasonable time following his placement in solitary confinement or administrative segregation. Hewitt, 459 U.S. at 476 & n.8.

On November 10, 2005, following his arrest and booking, plaintiff was placed in the solitary confinement unit pending review of his classification. Davis Aff., ¶¶ 6, 9; Holmes Aff., ¶ 23. Plaintiff was placed in this unit, rather than the general population, because he had had a number of behavioral problems during a prior incarceration, thus indicating that he constituted a threat to prison safety and security. Davis Aff., ¶ 7; Holmes Aff., ¶ 23; Grady Dep., at 77-78.[4] On November 14, 2005, plaintiff was interviewed by a classification officer, and on November 16, 2005, the Classification Review Committee classified him

---

[4]Plaintiff concedes that when he was booked into the jail on August 30, 2004, he demanded to be placed in a particular unit and threw his shirt across the floor when his demands were not met, conduct which resulted in his lockdown and loss of privileges following a hearing. Grady dep., at 16-18. On other occasions during this prior incarceration plaintiff tore up his mattress, id. at 24; removed his shirt and refused to comply with an officer's commands, id. at 26-27; masturbated while standing at his cell door window in view of a female officer, refused to pack his belongings, and began to curse and kick his cell door, id. at 30-31; was loud, rude, and disruptive during a disciplinary hearing, id. at 36; tore up his inmate handbook and Bible and stopped up his toilet with his underwear, id. at 37-39; blocked his food flap, id. at 48; refused to comply with an order to enter his cell, id. at 53; refused to come out of the shower, id. at 56; and engaged in other disruptive conduct, id. at 91. See also doc. 41 (where plaintiff again admits to losing control and acting out upon his admission to the jail in August 2004 and to throwing a chair during his disciplinary hearing).

as an "Administrative Segregation High Risk" inmate and recommended that plaintiff remain in the solitary confinement unit. Grady Dep., at 82-83, Ex. 17-A; Davis Aff., ¶ 10, Ex. 14.

"Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." Bell v. Wolfish, 441 U.S. 520, 561 (1979). Defendants have provided evidence that plaintiff had a history of disruptive behavior, often resulting in a threat to the safety and security of staff and other inmates, see Davis Aff., Ex. 1-11; Barbour Aff., Ex. 3-4; Hunt Aff., Ex. 1-4; Newsome Aff., Ex. 1; Phipps Aff., Ex. 1-4; Simon Aff., Ex. 1-3; Smith Aff., Ex. 1-2; Tisdale Aff., Ex. 1-4; Bryant Aff., Ex. 9-2, and plaintiff freely admitted during his deposition that he continually violated jail policy and engaged in disruptive behavior when he was previously confined at the jail. Plaintiff was given a classification review, but because of his past behavior and the fact that he had already created a disturbance since recently arriving at the jail, the committee recommended that he remain in isolation. Grady Dep., at 83, Ex. 17-A. Furthermore, plaintiff was given a weekly classification review while he remained in solitary confinement. Bryant Aff., ¶ 37, Ex. 24; Grady Dep.,

7

at 127. Plaintiff has not provided any evidence that his placement in solitary confinement constituted "punishment" in violation of his rights as a pretrial detainee under the Due Process Clause of the Fifth Amendment, Bell, 411 U.S. at 560-61, or that he failed to receive a fair hearing on the matter, in violation of his procedural due process rights. Hewitt, 459 U.S. at 476 ("an informal, nonadversary evidentiary review is sufficient . . . for the decision that an inmate represents a security threat"). Therefore, all defendants are entitled to summary judgment on plaintiff's claim that he was wrongfully assigned to the solitary unit upon his admission to the jail on November 10, 2005.

### B. Restraint Chair

Plaintiff was placed in a restraint chair at approximately 4:20 p.m. on February 10, 2005 in response to allegedly attempting to squirt a white liquid on a corrections officer, threatening the officer, returning a lunch tray with feces on it, and throwing feces from under his cell door. Simon Aff., ¶ 3-5, Ex. 1-2; Bryant Aff., ¶ 16-17, Ex. 9-2. Plaintiff remained in the restraint chair until approximately 12:01 p.m. on February 12, 2005. Bryant Aff., Ex. 9-9. Plaintiff's restraints were

checked by nurses regularly during this period and were twice removed so that he could eat. Bryant Aff., Ex. 9-3 to 9-8; Grady Dep., at 67. When plaintiff complained that he was cold, an officer gave him a blanket. Grady Dep., at 64.

Absent a "formal adjudication of guilt in accordance with due process of law," a state does not have the authority to impose punishment. Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977). Therefore, "[c]onditions of confinement imposed prior to conviction are limited . . . by the due process clause of the fourteenth amendment," instead of the Eighth Amendment. Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985) (citing Bell, 441 U.S. at 520). However, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." Hamm, 774 F.2d at 1574. In evaluating a pretrial detainee's conditions of confinement, "a court must decide whether the detention officials intentionally imposed the restriction for a punitive purpose or whether it is reasonably incidental to a legitimate government objective." Wilson v. Blankenship, 163 F.3d 1284, 1291-92

(11th Cir. 1998). "If a restriction is not reasonably related to a legitimate purpose . . . a court may infer that the purpose of the government action is punishment." Lynch v. Baxley, 744 F.2d 1452, 1463 (11th Cir. 1984). A court must also be mindful that

> not every disability imposed during pre-trial detention amounts to "punishment" in the constitutional sense . . . . And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

Bell, 441 U.S. at 537.

Again, "[e]nsuring security and order at the institution is a permissible nonpunitive objective. . . ." Bell, 441 U.S. at 561. Plaintiff testified that he did not commit any of the violations of which he was accused by the correctional officers. Grady Dep., at 58-60, 70-71. The alleged events were reported by Officer Simon, and the incident reports were filed by Corporal Milliken. See Grady Dep., Ex. 14-16. Nowhere does plaintiff allege that any of the defendants observed plaintiff's conduct or participated in or encouraged the filing of disciplinary charges against him. Nor does plaintiff allege that defendants knew or had

reason to believe that the allegations of serious misconduct by plaintiff were fabricated by the jail staff.

Plaintiff admits that he believes that the use of the restraint chair was applied in a good-faith effort to maintain or restore discipline, rather than maliciously and sadistically to cause harm. Grady Dep., at 61 ("I'm thinking they put me in the chair because of what that lady said in the incident report."). On this occasion, a non-defendant prison supervisor ordered that plaintiff be placed in the restraint chair, pursuant to prison policy, because another non-defendant officer had reported that plaintiff was creating a disturbance and posed a significant threat to prison security.[5] There is no evidence that any of the defendants knew that plaintiff had not created such a disturbance or that the use of the restraint chair was not justified on this occasion. As the defendants had no reason to suspect that the restraint chair was being used improperly, plaintiff has not shown that these defendants violated any of his constitutional rights. See, e.g., Williams v. Burton, 943 F.2d 1572, 1576 (11th Cir. 1991) ("where the conduct in question occurs in restoring

---

[5] Defendant Monica Bryant was notified by the corporal that plaintiff was in the restraint chair, Bryant Aff., ¶ 16, but it is not alleged that she took part in the decisions to place him in, or release him from, the chair, nor that she monitored plaintiff while he was in the chair.

official control during a prison disturbance, any security measure undertaken to resolve the disturbance gives rise to an Eighth Amendment claim only if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing harm.'")(quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)); <u>Blakeney v. Rusk County Sheriff</u>, 89 Fed. Appx. 897, 899 (5th Cir. 2004).

Insofar as defendant is challenging the duration of the restraint, the decision as to

> [h]ow long restraint may be continued calls for the exercise of good judgment on the part of prison officials. Once it is established that the force was applied in a good faith effort to maintain discipline and not maliciously or sadistically for the purpose of causing harm, the courts give great deference to the actions of prison officials in applying prophylactic or preventive measures intended to reduce the incidence of riots and other breaches of prison discipline. The good faith of the officers in exercising that judgment comes into play. . . . It is by . . . observation and management that corrections officials judge, in light of their experience and expertise, whether the plaintiff's violent nature has abated.

<u>Burton</u>, 943 F.2d at 1576 (citations omitted). Prison officials performed continuous observation and management of defendant during his restraint. Bryant Aff., Ex. 9-1 through 9-9. As plaintiff has proffered no

evidence that the duration of the restraint was excessive, the Court must give great latitude to the discretion of the prison officials. Burton, 943 F.2d at 1576. Accordingly, no constitutional violation occurred as a result of plaintiff's restraint.

But even if the use of the restraint chair was improper, claims brought pursuant to § 1983 cannot be based upon theories of vicarious liability or respondeat superior.[6] Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Department of Social Services of New York, 436 U.S. 658, 691 (1978). Rather, the plaintiff must demonstrate either that the individual defendant directly participated in the alleged constitutional deprivation or that there is some other causal connection between the official's acts or omissions and the injury allegedly sustained. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003); Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam). Such a causal connection may be established by showing that a supervisory official implemented or promulgated an official policy or failed to act after a

---

[6]Plaintiff testified that he is "suing the chain of command. . . all of them together" for not doing their jobs, rather than alleging that defendants were directly involved in the alleged violations. Grady Dep., at 174.

13

history of widespread abuse put the official on notice of the need to take corrective action. Cottone, 326 F.3d at 1360; Brown, 906 F.2d at 671; Williams v. Cash, 836 F.2d at 1320. A plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk, in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n., 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring). "'The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.'" Cottone, 326 F.3d at 1360 (citation omitted).

Plaintiff does not allege that any of the defendants were directly responsible for the length of plaintiff's restraint, nor has he provided affirmative evidence that his placement in a restraint chair for seventy-two (or forty-two)[7] hours was pursuant to jail policy.[8] Rather, prison

---

[7]Although plaintiff originally contended that he had been restrained for seventy-two hours, doc. 1, he admits and the prison records show that he was actually in the chair for approximately forty-two hours. Doc. 41.

[8]Plaintiff also does not accuse any of the defendants with refusing to allow him to urinate, naming only Corporal Kimble, who is deceased and not a named defendant, and an unknown officer as refusing his requests. Grady Dep., at 63-64. It

14

policy limits use of the chair to six hours unless a supervisory official authorizes a longer usage. Holmes Aff., ¶ 22. Defendant Bryant, however, the only defendant alleged to have been aware that plaintiff was in the chair, has stated in a sworn affidavit that had she been informed that plaintiff was in the restraint chair on February 11, she would have ordered his release. Bryant Aff., ¶ 18. Accordingly, plaintiff fails to show that defendants were directly or causally connected to the extended use of the restraint chair, and so his claim must fail.

### C. Use of Handcuffs and Leg Restraints

Plaintiff originally alleged that he was "constantly kept in shackles and handcuffs," including while showering and during his hour out of lockdown, doc. 1, but he later clarified that he was never in arm and leg restraints for more than eighteen hours at a time, doc. 11, and that he was not in handcuffs all the time, but only when prison officials said he had committed an infraction. Grady Dep., at 166. Prison policy dictates that prisoners be placed in restraints when they pose a threat to security

---

is jail policy for "staff to regularly go in the cell and allow the inmate to stand up to promote circulation and urinate." Bryant Aff., ¶ 19.

or themselves. Holmes Aff., ¶ 16. Plaintiff acknowledges that the restraints were removed when he calmed down. Grady Dep., at 43. Furthermore, it is prison policy to put arm and leg restraints on inmates in disciplinary segregation during their hour out of lockdown for safety and security reasons. Bryant Aff., ¶ 3.

The Court finds that plaintiff's claim fails to rise to the level of a violation of his constitutional rights, particularly when there are penological justifications for such restrictions on solitary confinement inmates. See Dorrough v. Hogan, 563 F.2d 1259, 1262 (5th Cir. 1977). The fact that plaintiff was shackled during his recreation time and while showering does not amount to an injury of constitutional magnitude. See Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999) (use of handcuffs and shackles to restrain prisoner for 24 hours after he threw water on corrections officer did not violate Eighth Amendment); LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (shackling a dangerous inmate while showering does not violate Eighth Amendment). Furthermore, plaintiff has not demonstrated that the named defendants directed that handcuffs or leg restraints be used for extended periods or

that defendants knew their subordinates were employing such restraints in violation of jail policy.

### D. Denial of Exercise

Plaintiff also alleges that "[t]here have been times" when he was "denied [his] hour out of the 24 hour lockdown status while in solitary." Doc. 1. Allegations of constant twenty-four hour lock-down for extended periods with no opportunity for exercise state a violation of the Eighth Amendment's proscription against cruel and unusual punishment and furnish grounds for relief under 42 U.S.C. § 1983. McGruder v. Phelps, 608 F.2d 1023, 1025 (5th Cir. 1979) ("[C]onfinement to a cell for twenty-three and one-half hours per day for periods of months and absence of outdoor exercise, may make out an eighth amendment violation."); Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (denial of regular exercise to inmates confined in cell twenty-four hours per day constitutes cruel and unusual punishment); Miller v. Carson, 563 F.2d 741, 751 n.12 (5th Cir. 1977) (deprivation of exercise may constitute an impairment of health forbidden by the Eighth Amendment). Plaintiff, however, does not allege that he was held in twenty-four hour lockdown for an extended

period but alleges only an occasional denial of out-of-cell exercise. Therefore, without more, this allegation fails to state a violation of his constitutional rights. See, e.g., Henry v. Covington County, 2005 WL 1268263, at *2 (M.D. Ala. May 27, 2005) (contention that plaintiff was confined in holding cell without recreation time for eleven days does not amount to a constitutional violation without further alleging that he could not perform exercises in his cell and that he suffered injury as a result of the temporary lack of exercise opportunities).

### E. Handcuffing to Door

Lastly, plaintiff alleges that he was handcuffed to his cell door and had his clothes taken after he put his hand in the food slot. Doc. 1; Grady Dep., at 163-64. Plaintiff testified that he was handcuffed to the door for sixteen hours and left in the cell without any clothes for seventy-two hours. Id. However, plaintiff testified that it was Officers Hill and Ferber, and not any of the defendants, who handcuffed him and took his clothes. Grady Dep., at 163. Plaintiff does not allege that any of the defendants were directly involved in the decision to handcuff and strip him, nor that they were aware of plaintiff's status.

As the Court has observed, plaintiff cannot base his § 1983 claim on a theory of respondeat superior or vicarious liability. Dodson, 454 U.S. at 325; Monell, 436 U.S. at 691. Plaintiff has not provided any evidence that it is jail policy to strip inmates and handcuff them to cell doors, whereas defendants have provided evidence that the jail forbids the practice. Bryant Aff., ¶ 48. On the single occasion that defendants admit to taking plaintiff's clothes, they have shown that he was on "suicide watch" after he wrote a letter stating that he wanted to kill himself and was given a paper gown to wear. Holmes Aff., ¶ 30, Ex. 22. As plaintiff's clothes were taken pursuant to a jail policy that was intended to ensure his own safety, this claim must fail. See Bell, 441 U.S. at 561.

## IV. Conclusion

Based upon the foregoing, defendants' motion for summary judgment should be GRANTED and this action should be DISMISSED.

**SO REPORTED AND RECOMMENDED** this _10th_ day of **August, 2007.**

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA